U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   SHREVEPORT

AUG 1 2 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

ROSE WALTER AND
SYLVESTER SHELTON

NO. 5:11-CV-00463

VERSUS

JUDGE DONALD E. WALTER

HORSESHOE CASINO & HOTEL

MAGISTRATE JUDGE HORNSBY

---

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed on behalf of the defendant,

Horseshoe Entertainment ("Horseshoe"). [Doc. #13]. The plaintiffs, Rose Walter ("Walter") and

Curtis Shelton ("Shelton"), oppose this motion and request an extension of time to conduct discovery

pursuant to Fed. R. Civ. P. 56(d). [Doc. ## 18, 19]. For the reasons assigned herein, Horseshoe's

Motion for Summary Judgment is **GRANTED**; Plaintiffs' Rule 56(d) motion is **DENIED**.

### STATEMENT OF THE CASE

On March 12, 2004, the plaintiffs were patrons at the Horseshoe Casino and Hotel in Bossier

City, Louisiana. While at the Horseshoe casino, another member of the plaintiffs' group was

involved in an incident with another Horseshoe patron. After the original incident seemed to be taken

care of, Walter allegedly began speaking loudly. As a result, security personnel for Horseshoe

instructed the plaintiffs to leave the premises for twenty-four hours.[1] The plaintiffs allege that as they

attempted to leave the casino, they were struck by Horseshoe security officers.

---

[1] Horseshoe alleges the plaintiffs were involved in a verbal altercation with another Horseshoe
patron. The plaintiffs deny they were involved in an altercation, stating they were cooperative and did not
used raised voices or profanity. Whether there was a "verbal altercation" is not the concern of the Court
at this point. All that matters is that security personnel instructed the plaintiffs to leave the premises.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042,

2

1047 (5th Cir. 1996) (citations omitted).

## DISCUSSION

In the First Supplemental and Amending Petition, the plaintiffs allege Horseshoe is liable for

(1) permitting the use of excessive force and permitting their unlawful arrest; (2) failure to train and

take necessary precautions to prevent this type of incident; and (3) intentional infliction of emotional

distress. [Doc. 13-4, ex. B]. In their opposition to the motion for summary judgment, the plaintiffs

abandon their intentional infliction of emotional distress claim. [Doc. #18 at 1, n. 1]. The basis of

the remaining claims is whether the Horseshoe security guards violated the plaintiffs' constitutional

rights, and to what extent Horseshoe is liable for those violations. Horseshoe contends that it is

entitled to summary judgment under qualified immunity, amongst other grounds.[2]

"The doctrine of qualified immunity protects government officials 'from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.'" *Pearson v. Callahan,* 129 S.Ct. 808, 18 (2009)

(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). There are two elements to an inquiry of

whether a person is entitled to the protections of qualified immunity: 1) whether a violation of a

constitutional right has been alleged or shown and 2) whether the right at issue was clearly

established at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).[3] "The

---

[2] Horseshoe also avers that it is entitled to summary judgment because (1) it is not a state actor subject to § 1983 liability, (2) even if it were a state actor subject to § 1983 liability, the plaintiffs have not established its liability under the *Monell* doctrine, and (3) the plaintiffs' claims fail under the rule of *Heck v. Humphrey.* The Court addresses the motion only on qualified immunity grounds.

[3] While *Saucier* required district courts to apply the two-prong test for qualified immunity in that order, the Court has since loosened that requirement. In *Pearson,* the Court overturned the strictness of the *Saucier* rule: "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in

3

touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, "even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Id.*

The plaintiffs allege that Horseshoe's security officers unlawfully arrested them and used excessive force. "To prevail on a constitutional claim of 'false arrest,' a plaintiff must show that he was arrested without probable cause." *Winston v. City of Shreveport*, 2009 WL 3584486 at *3 (W.D.La. Oct. 28, 2009) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)). The plaintiffs cannot make this necessary showing because Horseshoe security had probable cause to arrest the plaintiffs for remaining after having been forbidden.[4] Both Walter and Shelton were subsequently found guilty in Bossier City Court of violating Sec. 38-136 – Entry on or remaining in places or land after being forbidden – of the Bossier City Code of Ordinances. [Doc. 20-1, ex. 1]. In the criminal case, the city court judge said: "I find that the evidence supports the charge of Ms. Walters [sic] and Mr. Sylvester having remained after having been forbidden." [Doc. 20-1, ex. 1 at 85:11-12]. Finding the Horseshoe security officers lacked probable cause to arrest for remaining after forbidden even though the plaintiffs were found guilty of that offense would defy logic.[5] Based on the conclusions

---

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S.Ct. at 818.

[4] "If there [is] probable cause for any of the charges made ... then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis in original).

[5] In January 2011, the plaintiffs' convictions were set aside and a judgment of acquittal entered pursuant to La. C.Cr.P. art. 894. [Doc. #20-1, exs. 2-3]. Acquittal under Article 894, however, does not call into question the validity of the plaintiffs' convictions or the city court judge's determination that

4

of the Bossier City judge and this Court's review of the security footage, the Horseshoe security officers were reasonable to have believed they had probable cause to arrest the plaintiffs.

The plaintiffs also allege that the Horseshoe security guards used excessive force against them. "It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.'" *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996) (quoting *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993)). "In gauging the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for that force." *Id.* at 434. Upon review of the evidence, particularly the security camera footage, it is clear to the Court that the actions of the Horseshoe security officers were neither excessive nor unreasonable.

With regard to Walter, the security footage is clear that Horseshoe security personnel did not use any force against her. While one Horseshoe security officer assisted in handcuffing Walter, Officer Estess of the Bossier City Police Department, not a Horseshoe security officer, grabbed her wrists and forced her to the wall. The use of force against Walter was by Estess, not a Horseshoe employee, thus Walter has no valid claim of excessive force against Horseshoe or its security

---

they violated city law. Instead, Article 894 allows a judge to defer a misdemeanor sentence, and, if the defendant maintains a clean record during the time of probation, the original conviction is tossed. This process allows a person to maintain a clean criminal record. For that reason, that the convictions were ultimately set aside does not question the veracity of the city court's determination that Walter and Shelton did remain after being told to leave. Whether this has an impact on *Heck v. Humphrey*, which the parties address, need not be decided.

5

officers.[6]

The security footage does show that Horseshoe security officers used force against Shelton, but that force was not objectively unreasonable. The video shows that when Officer Estess tried to remove Walter, Shelton made a move toward them. At that point Horseshoe security guards pushed Shelton against a wall while Officer Estess attempted to restrain Walter. The video shows Shelton struggling against the Horseshoe officers. The officers attempt to control him and restrain his arms. Eventually, Shelton falls to the ground and the security officers keep him pinned there.[7] Throughout this struggle, the Horseshoe security officers did not use force that was objectively unreasonable in light of the circumstances. Shelton resisted Horseshoe security officers' efforts to restrain him, and their responsive actions do not rise to the level of excessive force.

The first inquiry under the qualified immunity test is whether a constitutional violation has occurred. The Horseshoe security officers would be entitled to qualified immunity here because they did not violate the plaintiffs' constitutional rights. As the Bossier City court found, Horseshoe security officers had probable cause to arrest the plaintiffs for remaining after being forbidden, thus no constitutional violation for unlawful arrest can lie. Further, no Horseshoe security officer used force against Walter, only Officer Estess did. Finally, the force used against Shelton was not excessive and was objectively reasonable in light of the circumstances. Accordingly, the Horseshoe security officers would be entitled to qualified immunity.

---

[6] Walter does not assert that Horseshoe is liable for the actions of Estess.

[7] The plaintiffs assert that a Horseshoe security officer kicked Shelton's knee causing him to fall. The security footage is inconclusive on the cause of the fall. Even if the Horseshoe security officers forced Shelton to the ground, because of Shelton's resistance that action was objectively reasonable and not a use of excessive force.

6

The individual Horseshoe security officers are not defendants in this case and have not moved for summary judgment; only Horseshoe has. However, since there was no constitutional violation, the plaintiffs' claims against Horseshoe cannot stand. This is true whether *respondeat superior* or municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), applies.[8] Under *respondeat superior*, Horseshoe would only be liable if the individual security officers were liable. Since the Court finds no individual liability, no *respondeat superior* liability exists. If *Monell* applied to Horseshoe, the plaintiffs would have to show a custom or policy that led to the constitutional violation. In *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), the Supreme Court held that a municipality is not liable under *Monell* when "a person has suffered no constitutional injury at the hands of the individual police officer." Because the Court finds the individual officers would be entitled to qualified immunity because there was no constitutional violation (as opposed to a qualified immunity because the constitutional right was not clearly established), the holding of *Heller* applies.[9] *Monell* does not provide a source of liability against Horseshoe.[10]

## CONCLUSION

For the reasons assigned above, the plaintiff's Rule 56(d) motion is **DENIED**. Horseshoe's

---

[8] The parties disagree whether Horseshoe would be liable under a theory of *respondeat superior* or *Monell*. The Court does not resolve that issue since there can be liability under neither theory.

[9] In their opposition, the plaintiffs seek relief under Rule 56(d) for more time for discovery before having to respond to the motion for summary judgment. The plaintiffs seek Rule 56(d) relief only for their *Monell* claims to obtain more information on Horseshoe's alleged custom or policy. Since there can be no *Monell* liability without a constitutional violation by an individual officer–and the Court finds no such constitutional violation–then the plaintiffs' Rule 56(d) motion is moot.

[10] For the same reason, the plaintiffs' claims that Horseshoe is liable for failure to train and take necessary precautions to prevent this kind of accident, which are essentially *Monell* claims, must fail.

7

Motion for Summary Judgment is **GRANTED**. The plaintiffs' claims under § 1983 are **DISMISSED WITH PREJUDICE**. The plaintiffs' state law claims are **REMANDED** to the appropriate state court for further proceedings.[11]

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[11] *See* 28 U.S.C. § 1367(c)(4). Since the Court has dismissed the claims over which it has original jurisdiction, it declines to continue exercising supplemental jurisdiction over Plaintiffs' state law claims.